**[Cite as *In re B.C.*, 2026-Ohio-1845.]**

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
DELAWARE COUNTY, OHIO

| IN RE: B.C. | Case No. 25 CAF 07 0055 |
|---|---|
| | <u>Opinion And Judgment Entry</u> |
| | Appeal from the Delaware County Court of Common Pleas, Juvenile Division, Case No. 23-03-0767-AB |
| | Judgment: Affirmed |
| | Date of Judgment Entry: May 19, 2026 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; Robert G. Montgomery, Judges

**APPEARANCES:** JULI D. JONES for DELAWARE COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES and SHANNON K. RUST as COURT APPOINTED SPECIAL ADVOCATES; JONATHAN KLEIN, for Mother.

*Montgomery, J.*

{¶1}   Appellant/Mother, A.N. ("Appellant"), appeals the trial court's decision that granted legal custody of her minor child to the minor's father. For the reasons set forth below, we affirm the decision of the Delaware County Court of Common Pleas, Juvenile Division.

### STATEMENT OF THE FACTS AND THE CASE

{¶2}   Appellant and J.C. ("Father") are the parents of B.C. (D.O.B. 1/25/14). The Delaware County Department of Job and Family Services ("DCDJFS") filed a complaint

on March 20, 2023, in the Delaware County Court of Common Pleas, Juvenile Division, alleging B.C. was an abused, neglected and dependent child. The complaint reflected reports of abuse by Appellant, Father and Appellant's boyfriend. There were also concerns that Appellant had made suicidal statements and that she may suffer from Factitious Disorder.

{¶3} The trial court held a probable cause hearing on March 21, 2023, and placed B.C. in the temporary custody of her maternal grandmother. The trial court found that DCDJFS had made reasonable efforts to prevent the removal of B.C. from her home, eliminate the continued removal from the home and make it possible for B.C. to return home.

{¶4} Appellant and Father admitted that B.C. was a dependent child pursuant to R.C. 2151.04(C) on June 9, 2023, and B.C. was placed in the temporary custody of her paternal aunt and uncle. The trial court again found that DCDJFS had made reasonable efforts to prevent the removal of B.C. from her home, eliminate the continued removal and make it possible for B.C. to return home.

{¶5} The trial court held a case review hearing on July 18, 2023, wherein B.C. was placed in the temporary custody of Father and his wife. The trial court found that DCDJFS had made reasonable efforts to prevent the removal of B.C. from her home, eliminate the continued removal and make it possible for B.C. to return home.

{¶6} Court Appointed Special Advocates ("CASA") filed an Emergency Motion to Suspend Mother's Visitation on September 29, 2023, that was granted by the trial court on the same day. Said motion stated that B.C. was in crisis at Cincinnati Children's Hospital and that two of her medical doctors, her pediatric mental health specialist and her therapist stated that B.C was the subject of emotional maltreatment by Appellant.

{¶7} A case review hearing was held on October 3, 2023, wherein B.C's therapist opined that visits between B.C. and Appellant were harmful to B.C. The therapist also testified that Appellant's mother allowed Appellant to have unsupervised conversations with B.C. The trial court found that DCDJFS made reasonable efforts to prevent the removal of B.C. from her home, eliminate the continued removal and make it possible for B.C. to return home. The trial court also ordered the parties submit to mediation. Mediation was not successful.

{¶8} A case review hearing was held on December 7, 2023. Evidence was submitted that Appellant completed a parenting assessment that found she suffered from borderline personality disorder and substance abuse disorder. Appellant was working with her own counselor who disagreed with the findings of the parenting assessment. CASA, DCDJFS, Father and B.C's therapist all recommended suspension of visitation between Appellant and B.C. The trial court ordered all visits between Appellant and B.C. were at the discretion of DCDJFS. The trial court also found that DCDJFS made reasonable efforts to prevent the removal of B.C. from her home, eliminate the continued removal and make it possible for B.C. to return home.

{¶9} Appellant filed a motion requesting an increase in visitation and court determination as to whether DCDJFS has made reasonable efforts to prevent the need for removal. DCDJFS filed a motion for legal custody, terminate court-ordered protective supervision and close the instant matter on May 23, 2024. Both motions were heard by the trial court on September 30, 2024, wherein six witnesses presented evidence.

{¶10} Messeret Tewolde, a family nurse practitioner/psychiatric mental health nurse practitioner, testified that she began treating Appellant monthly beginning in

March of 2023 for mental health concerns. Ms. Tewolde did not treat Appellant for substance abuse.

{¶11} DCDJFS caseworker Nicole Alexander testified that following Appellant's parenting assessment, it was recommended that Appellant participate in Dialectical Behavior Therapy, attend substance abuse treatment, and seek intensive outpatient treatment for suicidal thoughts. The trial court found that Appellant did not follow through with any of the parenting assessment recommendations or submit to a neurological exam. It was also found that Appellant failed to admit to any emotional maltreatment of B.C. and continued to test positive for cocaine.

{¶12} Ms. Alexander testified that Father has complied with his case plan, provided adequate care for B.C. and addressed B.C.'s mental health issues. Ms. Alexander also stated that there is a bond between Father, B.C. and other family members.

{¶13} B.C.'s therapist, Brianne Bergstrom, testified that B.C. had suicidal ideations following visits with Appellant. Appellant would engage in "trauma talks" with B.C. against the advice of Ms. Bergstrom. Ms. Bergstrom was concerned that B.C. was a victim of Factitious Disorder by Proxy and that Appellant created an anxiety-filled, fear-filled environment that exacerbated B.C.'s symptoms.

{¶14} Ms. Bergstrom testified that while B.C. was in her Father's care, her concerning behaviors largely ended, she started doing trauma work and had a more positive outlook.

{¶15} Dr. Kara Predmore conducted a psychological evaluation of Appellant and submitted a report to the court. Dr. Predmore's report was referred to as the "parenting assessment."

**{¶16}** Dr. Predmore noted that Appellant has received numerous diagnoses over the years including Bipolar Disorder, PTSD and generalized anxiety disorder. Appellant admitted that she drinks alcohol socially, uses marijuana for pain management and has used cocaine on two occasions. Dr. Predmore recommended the following:

- Appellant continue outpatient mental health therapy;

- Appellant explore alternatives to use of marijuana for pain management and manage her medications;

- Appellant engage in Dialectical Behavioral Therapy;

- Appellant engage in substance abuse treatment; and

- Appellant submit to a new neuropsychological evaluation or share copies of her past evaluation with DCDJFS and her current care providers.

**{¶17}** Dr. Predmore opined that there was a risk of future harm to B.C. from Appellant if she did not engage in treatment or acknowledge the need for treatment.

**{¶18}** Dr. Jerry Stern is a licensed psychologist who started treating Appellant for anxiety on October 16, 2023. Dr. Stern has weekly appointments with Appellant. Dr. Stern testified that Appellant's anxiety has improved since he began treating her. Dr. Stern did not consult collateral sources prior to giving his opinion.

**{¶19}** B.C.'s CASA guardian ad litem, Dianne Nelson, testified that visitation between Appellant and B.C. is harmful to B.C. Ms. Nelson stated B.C. was appropriately cared for while in Father's custody and she supports the motion for legal custody.

**{¶20}** The magistrate issued a decision following the hearing and Appellant filed objections to the decision. B.C. and DCDJFS filed responses to Appellant's objections. The trial court ruled on the objections and issued a judgment entry that granted DCDJFS's motion and awarded legal custody of B.C. to Father. The trial court also ruled that

DCDJFS had made reasonable efforts to eliminate the continued removal of the child from Appellant's home or make it possible that B.C. return home.

## ASSIGNMENT OF ERROR

{¶21} Appellant filed a timely appeal to the trial court's decision and asserts one assignment of error.

{¶22} "I. THE JUVENILE COURT ABUSED ITS DISCRETION BY FINDING THAT CHILDREN SERVICES MADE REASONABLE EFFORTS TO PREVENT OR ELIMINATE THE REMOVAL."

## STANDARD OF REVIEW

{¶23} This Court will review the trial court's decision to award legal custody to Father under an abuse of discretion standard. A trial court abuses its discretion when its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## ANALYSIS

{¶24} R.C. 2151.419 states that when a court removes a child from their home following a complaint filed by a children services agency "[t]he court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts."

{¶25} In the case sub judice, Appellant argues in her brief that DCDJFS "[f]ailed to make reasonable efforts toward reunification by suspending visitation for an extended

period without creating or carrying out any reunification plan, therapeutic visitation structure, or services aimed at reunification." *Appellant Brief*, p. 10.

**{¶26}** Although R.C. Chapter 2151 does not define "reasonable efforts," the term has been interpreted to mean, "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed." *In re C.F.*, 2007-Ohio-1104, ¶ 28. This Court has stated, "Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification." *In re D.A.*, 2023-Ohio-2823, ¶ 33 (5th Dist.), citing *In re H.M.K.*, 2013-Ohio-4317, ¶ 95. "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *Id.*

**{¶27}** Upon review of the record, we find substantial evidence to establish DCDJFS used reasonable efforts to reunify Appellant with B.C. DCDJFS developed a case plan on April 19, 2023. Said case plan was signed by all parties and adopted by the court.

**{¶28}** The case plan stated that Appellant would participate in case management, counseling, and parenting classes and follow recommendations. The case plan further stated that Appellant would not discuss any allegations with B.C. outside of therapy and submit to random drug screens. *4/19/23 Case Plan*, p. 4.

**{¶29}** Appellant failed to achieve the goals set forth in case plan. Appellant failed to participate in outpatient treatment for substance abuse and tested positive for cocaine on several occasions, the most recent positive test was on September 24, 2024. Appellant

failed to acknowledge her emotional maltreatment of B.C. and continued to discuss allegations outside of therapy. *6/30/24 Transcript*, pp. 38, 39, 126, 129 and 357.

{¶30} In the case at hand, this Court finds that the record establishes that DCDJFS acted diligently and provided services appropriate to Appellant's needs as a predicate to reunification. The trial court did not abuse its discretion in finding that DCDJFS used reasonable efforts to prevent or eliminate the need for removal. Therefore, Appellant's sole assignment of error is overruled.

## CONCLUSION

{¶31} For the foregoing reasons, the decision of the Court of Common Pleas of Delaware County, Juvenile Division, is hereby affirmed.

{¶32} Costs to Appellant.

By: Montgomery, J.

Baldwin, P.J. and

King, J. concur.